NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO L.M., B.Y., J.Y., B.Y., and E.Y.

No. 1 CA-JV 25-0092

FILED 11-21-2025

---

Appeal from the Superior Court in Maricopa County
Nos.  JD535376
JS520884
The Honorable Suzanne E. Cohen, Judge

**AFFIRMED**

---

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Angela K. Paton delivered the decision of the Court, in which Judge Daniel J. Kiley and Judge Brian Y. Furuya joined.

---

**P A T O N**, Judge:

**¶1**        Alexis M. ("Mother") appeals the juvenile court's order terminating her parental rights.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        We view the facts in the light most favorable to upholding the juvenile court's termination order.  *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 20 (2000).

**¶3**        Mother has five children: Lara, Brooke, John, Brandon, and Ella.[1] Jeremiah Y. is the father of all the children except Lara, whose father is Tavion E.[2]  Mother lived with three of her children; Brandon lived with his grandparents since he was two months old, and John lived with his great grandparents since birth.

**¶4**        In July 2023, Brandon's grandmother petitioned to adjudicate him dependent, alleging his parents "stay high" and do not provide a "good living environment [sic]."  While investigating these allegations, the Department of Child Safety ("DCS") discovered Mother and Jeremiah had been involved in numerous retail thefts, in which they had the children assist.  During the investigation, Mother and Jeremiah were arrested for organized retail theft, leaving their children without a legal caregiver.

**¶5**        DCS then petitioned to find all children except John dependent due to abuse or neglect.  DCS did not know John existed at the time because he had been living with his great grandparents.  Mother did not contest the dependency allegations, and the court adjudicated the four children dependent in December 2023.  The children lived with their grandparents for a few weeks before moving to their great grandparents' home, where they lived at the time of the termination hearing.

**¶6**        DCS later learned about John and petitioned to find him dependent due to neglect.  Mother did not contest the allegations, and the court found John dependent in July 2024.  John continued to live with his great grandparents.

---

[1] We use pseudonyms to protect the children's identities.

[2] The court terminated both fathers' parental rights in the same proceeding, but neither of them are parties to this appeal.

¶7          During the dependency, DCS offered Mother numerous reunification services, including substance-abuse testing, several parenting programs, and supervised visitation.  But Mother only sporadically engaged in these services.  She did not visit the children regularly, often going months without seeing them.  And every program DCS referred Mother to eventually closed out because she stopped responding or otherwise failed to engage.

¶8          Mother also continued to get in trouble with law enforcement. She was arrested again in September 2023, and had other run-ins with police in October 2023, December 2023, and July 2024.  She was arrested in September 2024 and remained incarcerated at the time of the termination hearing, facing ten counts of organized retail theft and one count of shoplifting.

¶9          Mother became more consistent with visitation after her incarceration.  She virtually visited with the children for twenty minutes once a week and called them for five to twenty minutes twice a week.  DCS found Mother generally appropriate during those visits but noted she focused mostly on the youngest child and verbally disciplined the older children only, sometimes inappropriately.

¶10          In December 2024, DCS petitioned to terminate Mother's parental rights based on neglect and six-, nine-, and fifteen-months' out-of-home placement grounds.[3]

¶11          At the May 2025 hearing, Mother either denied, or claimed she did not recall nearly every incident with police.  She also claimed she had been "doing good in the programs" DCS referred her to and had completed over 100 parenting programs while incarcerated—but she provided no certificates of completion.  Mother testified she planned to plead guilty to her charges and expected to be released in three months. She explained she planned to go to the Phoenix Rescue Mission after her release to "get on [her] feet," and asked for more time to engage in reunification services.

¶12          The DCS case manager testified extensively regarding Mother's continued failure to meaningfully engage in services.  She also testified Mother was often unresponsive to DCS's communications and evasive or untruthful in answering questions about her housing and

---

[3] DCS also alleged the substance-abuse ground but withdrew it during the hearing.

employment. She further testified that the children were doing well in their placement with their great grandparents, who wanted to adopt them.

**¶13** The juvenile court found DCS had met its burden of proving out-of-home placement grounds for termination as to all the children but had not met its burden as to neglect. It also found termination was in the children's best interests because it would allow their great grandparents to adopt them, which would give them "stability and permanency." The court terminated Mother's parental rights as to all five children.

**¶14** Mother timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") Sections 8-235(A), 12-120.21, and 12-2101(A)(1).

## DISCUSSION

**¶15** To terminate a parent-child relationship, the juvenile court must find (1) that at least one statutory ground for termination exists by clear and convincing evidence and (2) that the termination is in the child's best interests by a preponderance of the evidence. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149-50, ¶ 8 (2018).

**¶16** Mother only challenges the juvenile court's best interests finding. She does not challenge the court's finding of statutory grounds for termination, which we therefore affirm. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 1 (App. 2017) (challenging only the best-interests finding "abandon[s] and waive[s] any challenge to the court's finding of the statutory" grounds).

**¶17** Mother first argues the benefit of adoption does not outweigh her parental rights given her rehabilitative efforts and strong bond with her children. She further claims DCS failed to prove that maintaining her parental rights was detrimental to the children because "there [was] no evidence of negative physical or emotional responses from the children's interactions with Mother."

**¶18** We review a termination order for abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). We defer to the juvenile court's credibility determinations and accept its findings of fact if supported by reasonable evidence. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002). We do not reweigh the evidence but "look only to determine if there is evidence to sustain the court's ruling." *Mary Lou C.*, 207 Ariz. at 47, ¶ 8.

**¶19** Termination is in a child's best interests if the child would either benefit from terminating the relationship or be harmed by its continuation. *Alma S.*, 245 Ariz. at 150, ¶ 13. Either showing can independently support a best-interests finding. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016).

**¶20** The court must consider the totality of circumstances in its best-interests analysis. *Alma S.*, 245 Ariz. at 148, ¶ 1. A bond between the parent and child is a factor to consider but "is not dispositive in addressing best interests." *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 12 (App. 2016). The court should also consider the parent's rehabilitation efforts but should not subordinate the interests of the child to those of the parent. *Alma S.*, 245 Ariz. at 151, ¶ 15. A "child's interest in stability and security" is the court's primary concern. *Id.* at 150, ¶ 12. Therefore, "termination of parental rights, so as to permit adoption, is in [a] child's best interests." *Demetrius L.*, 239 Ariz. at 4, ¶ 12. And a showing that a current adoptive plan exists for the child, or even that the child is adoptable, may be sufficient on its own to meet the best interest requirement. *Mary Lou C.*, 207 Ariz. at 50, ¶ 19; *see also In re C.E.*, ___ Ariz. ___, 573 P.3d 101, 105, ¶ 22 (App. June 12, 2025).

**¶21** The juvenile court found Mother was not credible, emphasizing that she had been "consistently untruthful" with DCS. It determined Mother had a tenuous bond with children, if at all, and made little effort towards rehabilitation until she was incarcerated. And it found "no reason . . . to believe, based on past performance, that once released [M]other will engage with services or visitation."

**¶22** The court concluded the children would benefit from termination because their great grandparents wanted to adopt them. It found the great grandparents provided a "loving and nurturing home," and the children "ha[d] been thriving in their care." And adoption by their great grandparents would allow the children to remain with their siblings and stay connected to their extended family.

**¶23** The court's finding that the children would benefit from termination is sufficient on its own to support a best-interests finding. *Demetrius L.*, 239 Ariz. at 4, ¶ 16. Even so, the court additionally found the children would be harmed by the continuation of Mother's parental rights because Mother had "shown [she was] incapable of caring for the children[.]" It further found that denying termination would deprive the children of the permanency and stability of adoption.

**¶24**       Mother essentially asks us to reweigh the evidence, which we do not do. *Dominique M.*, 240 Ariz. at 98, ¶ 9. Sufficient evidence supports the juvenile court's conclusion that termination was in the children's best interests. We discern no abuse of discretion.

## CONCLUSION

**¶25**       We affirm.

